**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
THE WAVE STUDIO, LLC,

                           **Plaintiff,**

                v.

GENERAL HOTEL MANAGEMENT, LTD.,     13 CV 9239 (CS)

**MASTERCARD INTERNATIONAL, INC.,**    **14 CV 8322 (CS)**
**VIRTUOSO, LTD.,**

                      Defendants.
--------------------------------x
                   U.S. Courthouse
                   White Plains, N.Y.
                   November 24, 2014
                   10:35 a.m.


Before:   HON. CATHY SEIBEL,
            United States District Judge


APPEARANCES

**LEASON ELLIS, LLP**
**BY:  CAMERON REUBER, Esq.**
**One Barker Avenue, Fifth Floor**
**White Plains, N.Y.  10601**
**Attorneys for Plaintiff**

HIARING SMITH, LLP
**BY:  VIJAY K. TOKE, Esq.**
**101 Lucas Valley Road, Suite 300**
**San Rafael, CA  94903**
**Attorney for Plaintiff**

**VEDDER PRICE, PC**
**BY:  BLAINE C. KIMREY, Esq.**
**222 North Lasalle Street, Suite 2600**
**Chicago, IL  60601**
**Attorneys for Mastercard**

Exhibit A

KOZYAK TROPIN & THROCKMORTON, PA
BY:  DANIEL F. BENAVIDES, Esq.
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL  33134
Attorney for GHM

HOWARD SCHWARTZ, Esq.
Attorney for General Hotel Management

GOLDBERG SEGALLA, LLP
BY:  DANIEL B. MOAR, Esq.
665 Main Street, Suite 400
Buffalo, N.Y.  14203
Attorney for Setai Owners, LLC

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

```
1                 THE CLERK:  The Wave Studio, LLC v. Mastercard
2    International, Inc.
3                 THE COURT:  And, Mr. Moar, why are you here?
4                 MR. MOAR:  I represent Setai Owners.  They own the
5    hotel that's the subject of about half the photographs that
6    are at issue, and General Hotel Management was their agent.
7                 THE COURT:  The case is stayed as to you, is that
8    right?
9                 MR. MOAR:  That's correct, Your Honor, but we have
10   indemnification obligations for General Hotel Management.
11                THE COURT:  Make yourself comfortable.
12                Mr. Toke.
13                MR. TOKE:  Yes, yes.
14                THE COURT:  I guess Mr. Benavides?
15                MR. BENAVIDES:  Yes, this is he.
16                THE COURT:  Okay.  This is Judge Seibel.
17                MR. BENAVIDES:  Yes.
18                THE COURT:  I'm here in the courtroom.  We are on
19   the record.  I have a court reporter, so it is essential,
20   before either of you says a word, you say your last name.  You
21   don't have to say, "this is Daniel Benavides," just say
22   "Benavides" and whatever you have to say, because otherwise
23   the court reporter is not going to know which of you is
24   speaking.  And let me say -- make sure I know who is here in
25   the room.
```

```
 1              Mr. Reuber is here representing the Plaintiff.

 2              MR. REUBER:  Good morning, Your Honor.

 3              THE COURT:  And Mr. Schwartz and Ms. Lamore are here

 4    for General Hotel Management, as is Mr. Benavides, and Mr.

 5    Moar is here for Setai.  Do I have it right?

 6              MR. MOAR:  Yes, Your Honor.

 7              THE COURT:  And I left somebody out.

 8              MR. KIMREY:  Yes.

 9              THE COURT:  Mr. Kimrey is here for Mastercard.

10              MR. KIMREY:  And Virtuoso.

11              THE COURT:  And Virtuoso, okay.  So, I guess my

12    first question, I'll ask Mr. Reuber because he is here:  Why

13    did the Plaintiff bring this case in two parts?

14              MR. REUBER:  Your Honor, it's because I have -- our

15    firm has a conflict with Mastercard.  We were actually unaware

16    that the client was going to proceed against Mastercard until

17    after the fact, and I think Mr. Toke can answer any other

18    questions regarding -- because that's the extent of my

19    knowledge.

20              THE COURT:  You need to talk a lot louder and into

21    the mic, so that the folks on the phone can hear you.

22              MR. REUBER:  I'm sorry, Your Honor.

23              THE COURT:  Do you want to say that again?

24              MR. REUBER:  Yes.  We were unaware that the client,

25    Wave Studio, was going to proceed against Mastercard.  We have
```

1    a conflict because we represent Mastercard in trademark

2    matters.

3              THE COURT:  So, what's the plan going forward?

4              MR. REUBER:  Mr. Toke can answer that question.  I

5    have not had any discussions regarding the case once it was

6    transferred from California.

7              THE COURT:  Well, it just seems kind of silly to not

8    consolidate the cases because that then creates a conflict.

9              Mr. Toke, do you know what your client's preference

10   is?

11             MR. TOKE:  Our preference is not to consolidate the

12   cases, Your Honor, because we do not actually name GHM as a

13   defendant in the California case, because Plaintiff has no

14   evidence connecting GHM to the infringement involved with, I

15   guess, Virtuoso and Mastercard.

16             I will, I will represent that counsel for Virtuoso

17   and Mastercard has indicated to us that such evidence exists,

18   we have yet to see anything, and we have no evidence to

19   suggest that there is actually any link between GHM and

20   Mastercard, Virtuoso for the purposes of the infringement.  As

21   a result, we don't see any, any basis for consolidation.

22             THE COURT:  Mr. Kimrey is dying to say something.

23             MR. KIMREY:  Your Honor, we just heard counsel, Mr.

24   Reuber, say that the only reason this case wasn't brought, the

25   California case, before you is because his firm has a conflict

1    against Mastercard.  So, this case actually presumably would

2    have been brought here had that conflict not existed.

3            I have actually never seen a case that is more

4    appropriate for consolidation than this case.  If you look at

5    Judge Seeborg's transfer order, you can see some of the

6    reasons why the cases should be consolidated, although, you

7    know, admittedly, forum non conveniens transfer standards

8    aren't on all fours with the consolidation standards.

9            Under Civil Rule of Proceedure 42(a), this Court has

10   discretion to consolidate the matters if they have common law

11   or common facts.  Here, the photos that are at issue in what

12   was formerly the California case are at issue in the original

13   case.  The registrations that are at issue in what was the

14   California case are at issue in the original case.  The

15   witnesses will be the same.  The deposition testimony will be

16   the same.  The documentary evidence will be the same.

17           And, incidentally, up until just now, I wasn't even

18   aware that Mr. Reuber's firm was not representing The Wave

19   Studio in my case because of a conflict with Mastercard, and

20   we've spent considerable money litigating transfer from

21   California to this jurisdiction solely because of a conflict

22   that existed.

23           It seems to me that the more appropriate and

24   efficient course would have been for other counsel, without a

25   conflict, to enter his or her appearance before this Court and

1    sue us here as opposed to making us go through the unnecessary

2    and inefficient exercise of seeking transfer and then seeking

3    relatedness, and now seeking consolidation.  And we would like

4    to be under the stay that all of the other Defendants are

5    under other than GHM, including the discovery stay and the

6    stay related to any pleadings that should be filed.

7                THE COURT:  Well, let me say a couple of things.  If

8    I heard Mr. Reuber correctly, the conflict arises because his

9    firm represents Mastercard in trademark litigation.  So, if

10   Mastercard is unhappy with Mr. Reuber's firm, they can express

11   it.  I'm not going to get into it.  You can pick up and take

12   your business elsewhere if you don't like it.

13               Mr. Toke is of the view, apparently, that as far as

14   he can tell, this case shouldn't fall within the stay of

15   General Hotel Management, because as far as he can tell,

16   whatever Mastercard and Virtuoso did has nothing to do with

17   General Hotel Management.  So, why should the stay apply?

18               MR. KIMREY:  The only reason Mr. Toke is saying that

19   is because we have no discovery in the California litigation;

20   all we have done is litigate the transfer issue.

21               The photos at issue in the California litigation and

22   the New York litigation were all obtained by GHM via license

23   from The Wave Studio, from Junior Lee, who is the principal of

24   The Wave Studio, and then those photos were provided to the

25   various hotels that have been sued in this action, including

1    but not limited to the Setai Miami.  The Setai Miami is one of

2    the hotels that incidentally is at issue in what was formerly

3    the California case.

4              So, Virtuoso obtained the photos via the hotels that

5    obtained the photos from GHM, which obtained the photos from

6    The Wave Studio or Junior Lee.

7              THE COURT:  And what is Virtuoso?

8              MR. KIMREY:  Virtuoso is a travel agency.

9              THE COURT:  It's somehow related to Mastercard?

10             MR. KIMREY:  Virtuoso had an agreement with

11   Mastercard to provide discounts to Mastercard users.  In

12   conjunction with that agreement, Virtuoso gave access to

13   photos on the Mastercard website.  So that's why Mastercard

14   was originally sued in the California case.  Somehow it was

15   discovered that Virtuoso had provided those photos to

16   Mastercard.  So, Virtuoso was then named as a co-defendant in

17   the First Amended Complaint in California.

18             THE COURT:  So, Mr. Toke, isn't it fair to say that

19   General Hotel Management is the chokepoint here; that to the

20   extent these pictures went beyond General Hotel Management to

21   the whole world, including the, you know, dozens of people you

22   have sued, it all went through General Hotel Management?

23             MR. TOKE:  Right.  So, we have no indication that

24   that's actually true other than the representation from

25   opposing counsel that it may be true.  We've -- we actually

1   asked for the documents admittedly outside of discovery, but

2   for the purposes of determining whether or not there is a

3   connection, and we haven't received anything of that sort.

4           We do not have any evidence that that actually

5   happened.  These, these photographs are certainly available on

6   the Internet and it wouldn't be the first time that a party

7   pulled something off of the Internet without authorization.

8           So, without evidence that establishes that

9   connection between GHM as the source point, The Wave Studio

10  has no basis.  We have done investigation as much as we can

11  and haven't been able to make that connection.  So, as far as

12  we are concerned, we have yet to see anything that actually

13  would establish what Mr. Kimrey is representing.

14          THE COURT:  Well, I guess --

15          MR. TOKE:  As a --

16          THE COURT:  Go ahead.  I'm sorry.

17          MR. TOKE:  You know, as a result, we, we do not

18  believe that consolidation is appropriate and certainly not a

19  stay, as we are trying to understand the connections here.

20          THE COURT:  So, it seems like we can do one of two

21  things.  We could have a motion from Mr. Kimrey in which he

22  would have to put his cards on the table and provide the

23  evidence showing that his clients got these photographs

24  through the same means as all of the other stayed parties or

25  he could do that informally.

1           Is there a reason, Mr. Kimrey, why you wouldn't want

2   to save the trees and just try to convince Mr. Toke through

3   whatever documents or witnesses you would use in a motion?

4           MR. KIMREY:  We certainly --

5           THE COURT:  Or do you want to go through the

6   formality of a motion?

7           MR. KIMREY:  No.  We have been reluctant to provide

8   the information to Mr. Toke because we have seen the

9   California litigation from its inception as an end-run around

10  this stay; an effort to take discovery where it has been

11  stayed here, identify additional targets and sue them.  So, we

12  were reluctant to tacitly approve of that maneuver by giving

13  discovery when a stay existed here.  However, we can certainly

14  provide Mr. Toke with that evidence if it's essential to get

15  consolidation.

16          THE COURT:  Well, it sounds like your other option

17  is to make a motion, and if you didn't provide the details in

18  connection with the motion, Mr. Toke would say what he just

19  said here, which is, "how do we know you didn't download them

20  off the Internet," and that would be a good question.  If you

21  downloaded them off the Internet, it would be a very different

22  case, so.

23          MR. KIMREY:  The Complaint in the original case,

24  Your Honor, asserts that Junior Lee provided the photos only

25  to GHM.

1          THE COURT:  But then GHM provided them to dozens of
2  people and they were out there.
3          I'm not doubting you.  I'm just saying, you're going
4  to have to persuade either Mr. -- well, let me ask Mr. Toke a
5  hypothetical.  If Mr. Kimrey provided you with the evidence
6  you have been asking for and convinced you that indeed his
7  client has got these photos via Setai, which got them via GHM,
8  would you still be opposing consolidation?
9          MR. TOKE:  Well, it depends, Your Honor.  Of course,
10  we don't know -- first, the photographs at issue weren't just
11  the Setai.  So, it would really depend on the evidence itself.
12          We would certainly be much more inclined to agree to
13  the consolidation if there were evidence showing a clean link
14  between GHM and Virtuoso with the photographs, yes.  But
15  because the photographs at issue in the California case do not
16  overlap perfectly with the photographs in the New York, the
17  current New York case against GHM, I can't say that
18  unequivocally, but certainly, if there is some link, we would
19  be far more inclined to agree to consolidation.
20          MR. KIMREY:  Your Honor, I just --
21          THE COURT:  So, it sounds like Mr. Toke is going to
22  be reasonable.  If you show him that you are in the same boat
23  as all of the parties that were stayed, it sounds like he is
24  not going to dispute that you are in the same boat as all of
25  the parties that were stayed, but I don't blame him for, you

1    know, not assuming things.

2          MR. KIMREY:  Your Honor, there is a -- Mr. Toke

3    misspoke.  The photos at issue in California or what was the

4    California case, there are at least 11 of them that are at

5    issue in this case.  He had said --

6          THE COURT:  He said there is overlap but they don't

7    overlap entirely.

8          MR. KIMREY:  We can try to work it out with Mr.

9    Toke.  If past results are indicative of future returns, I'm

10   frankly skeptical, but we will give it a shot.  In the

11   meantime, could the case be stayed against us with respect to

12   both pleading and discovery?

13         THE COURT:  Well, I think the -- you know, that

14   issue needs to be -- obviously, if I'm going to end up

15   staying, it would be sort of -- it would defeat the purpose to

16   require you to dive into discovery now.  On the other hand, I

17   wouldn't want this to drag out.

18         What I would like to do is set a schedule, which

19   would give you two a window for informal discussions, but then

20   a date by which, Mr. Kimrey, you'll make a motion.  And then

21   we will have you brief it fairly quickly, and, you know, I

22   would jump the line with it and give you a bench ruling,

23   because if, if it ends up that you make a motion and Mr. Toke

24   convinces me that you shouldn't be stayed along with everyone

25   else, then I'll want to get going.

1          MR. KIMREY:  Your Honor.

2          THE COURT:  And if, if the outcome is you do belong

3     with everyone else, then no harm no foul.

4          So, what's a reasonable period, Mr. Kimrey, for you

5     to get your ducks in a row to show everything to Mr. Toke that

6     you would like to show him informally to convince him of the

7     ripeness of your position?

8          MR. KIMREY:  A week from Friday.

9          THE COURT:  Okay.  So, today is the 24th.  A week

10    from Friday is December 5th.

11         So, by December 5th, Mr. Kimrey will provide

12    whatever information he has got to Mr. Toke.  Mr. Toke is

13    going to want to consider that.

14         Mr. Toke, is it reasonable that you will get back to

15    Mr. Kimrey by the 19th as to whether you'll consent?

16         MR. TOKE:  Yes, Your Honor, that's reasonable.

17         THE COURT:  All right.  If there is no consent to

18    the consolidation and stay, Mr. Kimrey will have to make a

19    motion.  When could you do that without ruining your holidays?

20         MR. KIMREY:  Mid-January.

21         THE COURT:  January 15th?

22         MR. KIMREY:  Sure.

23         THE COURT:  And how long would you like to oppose,

24    Mr. Toke, if he makes his motion by January 15th?

25         MR. TOKE:  Well, let's say ten days.

Sue Ghorayeb,  Official Court Reporter

```
 1              THE COURT:  Very efficient.  That will take you to
 2    the 25th.  Let's make it the 26th, because the 25th is a
 3    Sunday.  And reply in a week, Mr. Kimrey?
 4              MR. KIMREY:  Yes.
 5              THE COURT:  February 2nd.
 6              And let me ask Ms. Cama for a date for me to give
 7    these folks a bench ruling.  I'm away the week of the ninth,
 8    so let's make it -- and we have a trial the week of the 23rd.
 9    So, let's try to make it the 18th or 19th?  Do we have
10    anything in there?
11              THE CLERK:  February 19th.
12              THE COURT:  February 19th at?
13              THE CLERK:  9:30 a.m.
14              THE COURT:  9:30 a.m.
15              MR. KIMREY:  Your Honor, I do have one concern, and
16    maybe that's going to change now that new counsel appears to
17    be appearing for GHM.  But discovery cutoff right now, in the
18    original case, I think is December 31st as to the limited
19    issues as to GHM.
20              We have been unable to get access to the discovery
21    that's occurring in the original case, because we haven't been
22    a party in the original case, and I was interested in
23    potentially accelerating our becoming a party, so we could see
24    what's going on in the original case, because that original
25    case is dispositive as to issues in our case.
```

Sue Ghorayeb,  Official Court Reporter

```
 1              So, in the alternative, we would, just to accelerate
 2     things, if the schedule stays the same, be willing to get a
 3     motion on file much faster on consolidation, so that we could
 4     become a party and get access to the discovery that's
 5     occurring in the original case.
 6              THE COURT:  Well, I mean, it doesn't really -- I
 7     just want to understand why that's so important.
 8              If you get what you want, that's going to be
 9     bubbling along, and if General Hotel Management carries the
10     day, you are off the hook, and if it doesn't, then you will
11     have an opportunity to play ball.
12              MR. KIMREY:  Well, we theoretically could influence
13     the trajectory with respect to GHM.
14              There's also a fairly twisted defense and indemnity
15     matrix that exists in the background.  That I don't think is
16     going to be put before you to decide, because it's not
17     relevant to the underlying issues of copyright infringement,
18     but it is relevant to the issues of who is paying for what.
19     And the sooner we can see what's going on in the original
20     case, the sooner we can take certain steps that would affect
21     who is paying for what as to Virtuoso and Mastercard.
22              THE COURT:  And why can't your co- -- your perhaps
23     future co-defendants just tell you what's going on?
24              MR. KIMREY:  We have received indication, and that's
25     a passive voice, that they won't show us everything we want to
```

1    see, and if we were a party, we would have a right to see it.

2    And I could issue discovery out of one case into the other,

3    but that's the kind of inefficiency we are trying to avoid by

4    transferring, showing relatedness, and seeking consolidation.

5            THE COURT:  Well, if you want to make the motion

6    sooner, and that's fine with me, but then -- that's fine.

7            If you don't have it worked out by December 19 --

8    well, let me ask Mr. Schwartz as he is sitting here, and maybe

9    this is moot.  What's the story with -- and I need you to come

10   stand by a microphone, so the folks on the phone can hear you.

11           What's the story with your firm and Mr. Benavides's

12   firm?  Who is representing GHM?

13           MR. SCHWARTZ:  Yes.  We will be substituting in for

14   Mr. Benavides's firm, and as my predecessor was stating that

15   he was a little bit passive, let me be completely passive,

16   because I would prefer for Mr. Benavides to explain what has

17   happened in the past.  I can only say that we are happy to

18   come in, we are coming in, and --

19           THE COURT:  Well, are you in a position to finish

20   discovery on time, 12/31?

21           MR. SCHWARTZ:  We had a discussion with Plaintiff's

22   counsel.  Plaintiff's counsel said that his -- the answer to

23   that question is probably yes.  I would have, I would have

24   hoped for a short extension, which I asked -- which we

25   discussed with Plaintiff's counsel.  He said he had no

1    particular problem with that except his January is jammed up,

2    in that if he could -- I think we were discussing a thirty-day

3    extension.  I don't, I don't want to misspeak, but I know we

4    did discuss that potentiality.

5           Myself and my firm have no desire to extend

6    discovery for a prolonged period of time, but a short period

7    is acceptable to us, and I think it was acceptable to

8    Plaintiff, but I don't want to speak for him.

9           THE COURT:  Well, Mr. Benavides, anything you want

10   to add?  What's going on with discovery?

11          MR. BENAVIDES:  Well, Judge, we've, we've changed

12   the -- we have exchanged documents.  We have exchanged

13   document requests and documents.

14          We have not reviewed the documents that we received.

15   We received several documents from Plaintiff.  We have not

16   reviewed them yet because of the entry of new counsel.  And,

17   so, we would, you know, begin reviewing those documents,

18   finalize that process, and then probably set depositions.

19          We have been attempting to schedule depositions with

20   Plaintiff's counsel for some time.  We would like to set those

21   for January, if possible, but it sounds like his schedule is

22   booked up, and then I think we would be pretty much ready to

23   go on, on discovery.

24          THE COURT:  How many depositions do you anticipate?

25          MR. BENAVIDES:  We anticipate taking about maybe

1    three or four.  I don't know what the Plaintiff wants to do.

2              THE COURT:  Mr. Reuber, how many depositions are you

3    expecting?

4              MR. REUBER:  At least two, possibly four.

5              THE COURT:  So, it doesn't sound like there is any

6    way you are going to get that done by December 31st.

7              MR. BENAVIDES:  No, that's the case.

8              THE COURT:  Four weeks, including Christmas, to get

9    eight -- five to eight depositions done.  Let's be realistic

10   here.

11             And, Mr. Reuber, you have got a problem in January?

12             MR. REUBER:  Yes, Your Honor.  I have a two-week

13   jury trial before Judge Briccetti, and then I've got at least

14   another week's work of depositions in a case before Judge

15   Sweet that he would like to see completed before February.

16             THE COURT:  So, if I extend to the end of February,

17   you will have December and February to get this done.

18             All right.  I'll extend discovery to March 2nd for

19   Plaintiff and GHM, in 13 CV 9239.

20             How does that affect your outlook on when you want

21   to make your motion, Mr. Kimrey?

22             MR. KIMREY:  I want to do whatever you want me to

23   do, Your Honor,.

24             THE COURT:  Well, I set the schedule, and then you

25   said you would like a tighter schedule perhaps, depending on

1    what was going on with the discovery in the original case.

2            So, I'm happy to set -- you know, right now, you've

3    got -- you're going to get an answer on December 19th whether

4    there is going to be consent.  If there is not, then you are

5    taking four weeks to make the motion.  If you want to take

6    less, that's fine.  I'm indifferent.

7            MR. KIMREY:  Do we need -- so, can we dispense with

8    the pre-motion letter requirement?

9            THE COURT:  Yes.

10           MR. KIMREY:  Okay.

11           THE COURT:  Yes.  We are talking about it now.

12           So, if Mr. Toke gets back to you on December 19th

13    and says, "I'm not consenting," right now the schedule calls

14    for you to make the motion by January 15th and it will be

15    briefed briskly, and you will have an answer February 19th.

16    If you want to move it up, I can move it up.

17           MR. KIMREY:  Since we have gone through the exercise

18    of your setting the schedule, let's just stick with that.

19           THE COURT:  Okay.  And, in the meantime, the time to

20    answer for Mastercard and Virtuoso will be extended to a date

21    to be set when we meet on December 19th.

22           THE CLERK:  February.

23           THE COURT:  I'm sorry, February 19th.  Thank you.

24           MR. TOKE:  Your Honor, a question in terms of the

25    timing.  If Mr. Kimrey does in fact file a motion, the

```
1    January 15th date that the Court just set --

2              THE COURT:  Your date to oppose is still

3    January 26th, even if he wants to do it early, unless -- well,

4    in my experience, lawyers never do things early, but in the

5    unlikely event he does it early, unless he does it

6    significantly early, the rest of the schedule will remain the

7    same.  If he does it two weeks early, then you two should talk

8    and try to work out a briefing schedule, and I can adjust the

9    date that I'm going to give you the bench ruling, but it

10   doesn't sound like he is planning to do earlier.

11             MR. TOKE:  Very good, Your Honor.

12             THE COURT:  All right.  Anything more we should do

13   now?

14             MR. KIMREY:  Your Honor, how should we convey if we

15   agree that the cases should be consolidated?  Should we --

16             THE COURT:  You can just send me a letter and --

17   with a proposed order and -- with a proposed order of

18   consolidation and a stay.

19             Did I -- I can't remember now whether the stayed

20   parties in the first case answered or not, but whatever they

21   did, you should do the same, if there is going to be a stay in

22   the second case.

23             MR. KIMREY:  Your Honor, a couple of the parties

24   answered when they didn't realize there was a stay.  I think

25   Delta answered and --
```

```
1              THE COURT:  Okay.  All right.  So, if you agree that
2    there should be a stay, put in it that the time to answer is
3    also stayed.
4              MR. KIMREY:  And the answer on that responsive
5    pleading deadline is continued.
6              THE COURT:  Yes.
7              MR. KIMREY:  All right.
8              THE COURT:  If there is -- when I rule on December
9    19th either -- well, if I rule on February 19th that there is
10   not going to be a stay, we will set a time to answer.  If
11   there is going to be a stay, you don't have to answer, and if
12   you agree on the stay, then you also don't have to answer.
13             Okay.  Anything else?
14             All right.  Thank you very much.
15             Can I just ask on the Plaintiff's side, is it --
16   well, I guess I should ask this again after we know whether
17   there is going to be a consolidation, but it just seems --
18   what's the right word -- cumbersome to have two different
19   Plaintiff's lawyers if we consolidate.  So, I'll ask you again
20   later on what the Plaintiff's plans are.
21             MR. TOKE:  Very good.  Thank you, Your Honor.
22             THE COURT:  All right.  Thank you all.  Sorry about
23   the difficulty.  I think I accidentally hung up on you before
24   when I was trying to put you on speaker.
25             MR. TOKE:  That's okay, Judge.
```

Sue Ghorayeb,  Official Court Reporter

```
 1                THE COURT:  All right.  Have a good holiday
 2   everyone.
 3                MR. BENAVIDES:  Thank you, Your Honor.
 4                MR. KIMREY:  Thank you, Your Honor.
 5                MR. SCHWARTZ:  Thank you, Your Honor.
 6                MR. REUBER:  Thank you, Your Honor.
 7                THE COURT:  Have a good holiday everyone.
 8                MR. KIMREY:  You too.
 9                (Case adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```