```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE WAVE STUDIO, LLC,

                Plaintiff,

         v.                              14 Civ. 8322 CS

MASTERCARD INTERNATIONAL,
INC.,

                Defendant.
------------------------------x
                                        White Plains, N.Y.
                                        April 23, 2015
                                        3:15 p.m.
Before:

                  HON. CATHY SEIBEL,

                          District Judge

                      APPEARANCES
COBALT, LLP
     Attorney for Plaintiff
VIJAY K. TOKE

VEDDER PRICE
     Attorney for Defendant
BLAINE CHRISTOPHER KIMREY



                       CONFERENCE
```

1        THE COURTROOM DEPUTY:  The Wave Studio v. MasterCard
2   International.
3        THE COURT:  Mr. Benavides, you're on the phone for
4   this conference.  Mr. Toke is here for the plaintiff and
5   Mr. Kimrey is here for MasterCard.  And I'm just realizing that
6   I don't know how this happened but we put this on for today to
7   talk about the dispute that MasterCard and the plaintiff are
8   having in 14 Civ 8322 and then we put on for tomorrow 13 Civ
9   9239, now that we've straightened out who's representing the
10  plaintiff.  Since you're with us, Mr. Benavides, I don't see
11  why we need to do it two separate times.  We can do it all now.
12       MR. BENAVIDES:  Is Howard Schwartz in the courtroom?
13       THE COURT:  He is not.  Who is he?
14       MR. KIMREY:  Mr. Benavides was former counsel for GHM
15  in the earlier case and he was replaced by Howard Schwartz.
16       THE COURT:  Why is Mr. Benavides on the phone with us
17  at all?
18       MR. BENAVIDES:  I asked to participate in tomorrow's
19  status conference because there may be some facts -- we are
20  still counsel for GHM although we're not lead counsel because
21  insurance appointed Mr. Schwartz, so he's been lead counsel for
22  the past few months.  But we have some information as to the
23  history of the case so I asked to be part of the hearing
24  tomorrow just in case the Court wanted any additional
25  background.  But I'm not too familiar with what's happening

1    now.
2            THE COURT:  I'm beginning to realize my mistake.  We
3    looped you into this conference which you don't need to be
4    looped into.  We should have waited until tomorrow.
5            MR. BENAVIDES:  I'm happy to listen in.
6            THE COURT:  I don't think you have anything to do with
7    this dispute.
8            MR. BENAVIDES:  No.
9            THE COURT:  Sorry to bother you.  We'll call you
10   tomorrow.
11           MR. BENAVIDES:  No problem.  Thank you, Judge.  Take
12   care.
13           THE COURT:  Mr. Toke, you came here from California?
14           MR. TOKE:  Yes.
15           THE COURT:  So next time we do this, say to me why
16   don't you put both on the same day so I don't have to come
17   back.  Feel free to say that.
18           MR. TOKE:  Actually, it's better that these are
19   separated to be honest because the matter that's before the
20   Court today deals with the confidential terms of our
21   settlement, and so to the extent that the other PARTIES may not
22   know about it, it's better that we're separated anyway.
23           THE COURT:  We could put on one at ten and one at
24   noon.  You shouldn't have to stay over an extra day just
25   because I'm a little clueless about my own calendar.

1             I don't suppose you've worked anything out since
2    you've been here.  I guess I'm a little puzzled.  Let's go off
3    the record a minute.
4             (Discussion off the record)
5             THE COURT:  So Mr. Kimrey, doesn't the Supreme Court
6    case Kokkonen say that once the case is dismissed unless it's
7    pursuant to a stipulation where I retain jurisdiction to
8    enforce a settlement that I don't have jurisdiction to enforce
9    the settlement and you have to go to state court and bring a
10   new lawsuit?
11            MR. KIMREY:  It says that, your Honor.  But that's not
12   all it says.
13            THE COURT:  What else does it say?
14            MR. KIMREY:  It says that if there's an independent
15   basis for jurisdiction, even if the parties don't provide in an
16   order that the court retains jurisdiction over enforcement of
17   the settlement agreement, that the court can enforce the
18   settlement agreement.  That begs the question what are the
19   independent bases of jurisdiction for this Court.
20            Number one, there's diversity.  Wave is a limited
21   liability company.  It is deemed to be a citizen of its
22   members, not where it's registered, so it is not a New York
23   citizen, it's a citizen of the citizenship of its members.  We
24   believe that Wave is a single member LLC, it single member is
25   Junior Lee.  Junior Lee lives in Singapore.  That means that

1   there's complete diversity.  Amount in controversy, we can say

2   that's the amount of the settlement agreement or perhaps more

3   so we have more than $75,000 in controversy.  So this Court has

4   jurisdiction under 1332 to decide, to enforce the settlement

5   agreement.

6          Number two, there's federal question jurisdiction.  We

7   have a claim under the U.S. Copyright Act of noninfringement.

8   We would seek declaratory relief on that creating federal

9   question jurisdiction.  And to the extent the dispute over the

10  settlement agreement was a breach of contract dispute as well,

11  the Court would have supplemental jurisdiction over that.

12         Number 3, the parties, before the case was

13  unilaterally dismissed, asked for the Court to enforce the

14  settlement agreement in the letters to the Court.  So the

15  parties, plaintiff and defendant in the letters to the court,

16  said court, please enforce the settlement agreement.  How they

17  viewed what that would mean differed, obviously.  But they

18  invoked the jurisdiction of the court before dismissal to

19  assist in this regard.

20         Additionally, Kokkonen has language about the ability

21  of a court to enforce a settlement agreement, to maintain its

22  docket, the utility of the justice system, etc.  Kokkonen

23  doesn't elaborate on that and it is admittedly ambiguous about

24  that and there's lots of commentary about that ambiguity.  And

25  judges are all over the place on what that means across the

1   country.  But that language could be used as a tool to retain
2   jurisdiction to enforce the settlement.
3           THE COURT:  If I wanted to.
4           MR. KIMREY:  If you wanted to.
5           THE COURT:  Which I don't particularly.  Why isn't
6   that right, Mr. Toke, why isn't there diversity jurisdiction
7   apart from the federal claim?
8           MR. TOKE:  With regard to the diversity claim, we
9   don't believe that that is correct, since the LLC is based here
10  in White Plains and its principal place of business is here in
11  New York.
12          THE COURT:  I pretty sure with a LLC you go by the
13  citizenship of the members.
14          MR. TOKE:  Even if that were true --
15          THE COURT:  I don't think -- I think you disregard
16  where it's incorporated.  But I wouldn't swear to the latter.
17          MR. TOKE:  Even if that were true, your Honor, the
18  issue here is one of enforcement of this settlement agreement,
19  not for breach of contract or any other claims that defendants
20  are making.  Once the case is dismissed the court no longer
21  retains jurisdiction.  If MasterCard Virtuoso were to claim a
22  breach of contract on the settlement agreement perhaps on that
23  breach of contract claim there could be diversity jurisdiction.
24  But that is a different case, not this one.  The same thing
25  with the federal question.  The federal question --

1           THE COURT:  I suppose that's technically true on the
2    diversity case.  But if Mr. Kimrey just walked into the
3    courthouse tomorrow and brought a breach of contract claim and
4    checked that little box that said it's related to this case it
5    would come to me and we'd be having the identical conversation.
6           MR. TOKE:  Perhaps true, your Honor, but that would be
7    an impediment, even if a small one, that defendants would have
8    to go through in order to have the court exercise jurisdiction.
9    These types of technicalities and requirements exist in so many
10   different circumstances.  And courts have to enforce them
11   because the rules are what they are.  So if they're going to
12   bring a breach of contract claim on diversity grounds and have
13   this court exercise jurisdiction then they'd have to do that
14   and I don't think they have.
15          Second, with regard to the federal question issue,
16   that relief would require there to be some threat of
17   litigation.  There is none.  There is a settlement agreement
18   that was meant to end that dispute and did end that dispute.
19          THE COURT:  Did MasterCard, either defendant ever
20   answer here?
21          MR. TOKE:  No.
22          THE COURT:  There is no extant counterclaim.
23          MR. TOKE:  Correct.  And therefore there is no basis
24   for the federal jurisdiction under -- federal relief under the
25   Copyright Act because they haven't made any such claim.  And

1   there's no dispute or threatened litigation for that
2   jurisdiction either.
3           With regard to the letter brief of the plaintiff
4   asking for the Court to enforce the settlement, that was prior
5   to the filing of the dismissal. And so with the dismissal on
6   Rule 21, the court is divested of jurisdiction.
7           MR. KIMREY: Your Honor, I'd like to cite for the
8   Court United States v. Erie County, 763 F.3d 235, a decision by
9   the Second Circuit. In this decision, the Second Circuit
10  adopted the Sixth Circuit's reasoning in the following case,
11  Limbright v. Hofmeister, 566 F.3d 672. What these cases stand
12  for is if the court has diversity jurisdiction it may enforce,
13  it has jurisdiction to enforce the settlement agreement. There
14  are some Southern District of New York cases that preceded the
15  United States v. Erie case that say that rather than proceeding
16  in the original case, a party in my position seeking to enforce
17  the settlement agreement has to file a new action. Those are
18  abrogated by United States v. Erie.
19          So the prevailing law in the Second Circuit is that if
20  there is diversity, which there is here because an LLC is not
21  deemed to be a citizen of the state of its incorporation, you
22  have jurisdiction to enforce the settlement agreement.
23          And just as a practical matter, your Honor, you
24  highlighted this, if you didn't, we would just sue in the
25  Southern District of New York, we'd get assigned to a judge,

1    we'd say we want to go back to Judge Seibel, we'd come back to
2    you, and we'd renew our motion to consolidate.  And that seems
3    pointless.  And what's the filing fee, four hundred bucks,
4    something like that.  Not much of a barrier.
5             THE COURT:  No.  It's just a hoop.  But Mr. Toke is
6    right, we're a profession of technicalities.  You may be right
7    on the law.  I don't know as I'm sitting here.  It just seems
8    so crazy to me that either party would spend another hour
9    writing a brief when I think we have a simple solution.
10   Mr. Toke is nodding.  So let's do this.  I will set a date for
11   you guys to send me, I guess it would be a motion, for you to
12   make a motion Mr. Kimrey, but I'll push that date far enough
13   out to let cooler heads prevail and hopefully you can work
14   something out.  It just seems like there's a simple way I think
15   that will address everybody's concerns and won't cost very much
16   money.
17            MR. KIMREY:  That sounds good, your Honor.
18            MR. TOKE:  I think that's a fair plan, your Honor.
19            THE COURT:  Why don't we say if it doesn't work out,
20   you'll make a motion by the end of May.  Is that all right,
21   Mr. Kimrey?
22            MR. KIMREY:  Yes.
23            THE COURT:  May 29th.
24            MR. TOKE:  I'm going to be out of the country, your
25   Honor, from May 25 to June 6.

1  THE COURT:  Do you want to give him until June 5?
2  MR. TOKE:  Fine.
3  THE COURT:  That's very nice to you.  Then you'll have
4  this motion waiting on your desk when you arrive.
5  MR. TOKE:  Exciting.
6  THE COURT:  Just what you want.
7  MR. TOKE:  Exactly.
8  THE COURT:  I don't know if you want to make a
9  cross-motion but we'll set a date for opposition and possible
10  cross-motion.  How long would you like after you get back?
11  MR. TOKE:  Just the amount of time allowed under the
12  rules.
13  THE COURT:  I always tell the lawyers in front of me
14  don't be macho, I have a million motions on line ahead of you.
15  Tell me what will work for you.  The default under the court's
16  rules is 14 days.  I'll give you more if you want.
17  MR. TOKE:  Let's say 21 days.
18  MR. KIMREY:  Fine with me.
19  THE COURT:  June 26.  And then what would you like for
20  your reply, Mr. Kimrey?
21  MR. KIMREY:  14.
22  THE COURT:  That will take you to July 10.  If there
23  is a cross-motion that reply would be June 24.  And have I
24  given you my speech about bundling the motion papers?
25  MR. KIMREY:  I know it.

1         THE COURT:  You can share it with Mr. Toke.  Hopefully
2    it won't come to that.
3         MR. KIMREY:  So, your Honor, just a couple of more
4    matters that I want to make sure I get on the record.  Under
5    the rules, the voluntary dismissal with prejudice is deemed a
6    final judgment.  And my concern is that under that motion to
7    dismiss with prejudice we could be a prevailing party, and
8    there are several cases that address this, deemed a prevailing
9    party after dismissal with prejudice.  If the settlement
10   agreement is repudiated we have a claim for fees under the U.S.
11   Copyright Act.  And I want to make sure that -- the rules
12   provide for a motion for fees to be filed 14 days after the
13   entry of judgment.  It's an open question whether there's an
14   entry of judgment here given the pending issues.  And that the
15   court has authority to extend that deadline within its
16   discretion.  I don't want to haul off and file a motion for
17   fees at this point while we're trying to compromise and work it
18   out.  I also don't want to be deemed to have been precluded
19   from filing a motion for fees.  So I'm wondering whether the
20   court would deem the deadline to be entered and continued until
21   some point in the indefinite future on such a motion for fees.
22        THE COURT:  That seems reasonable to me.
23        MR. TOKE:  Sure, your Honor.  I would only say under
24   the Copyright Act the request for fees is certainly
25   discretionary.

1           THE COURT:  I'm not saying I'm going to grant fees,
2   because I don't think it's done routinely in a copyright case.
3   However, I'll extend the deadline to either ten days after I
4   decide the motion or some other date that we agree on later.
5           MR. KIMREY:  Thank you, your Honor.  And then the
6   final point just for purposes of the record, we also have
7   Rule 60(b) which I could invoke for purposes of setting aside
8   the judgment.  I am not doing that yet and actually under 60(b)
9   we have a year.  So I don't need that to be continued.  But I
10  just want to note that we're reserving our rights under 60(b)
11  which would also be a way to invoke your Honor's jurisdiction,
12  if all of the other reasons were not sufficient.
13          THE COURT:  These are all things that Mr. Toke just
14  does not want to deal with.  So that's why you're going to get
15  to yes, I hope.
16          One housekeeping matter, Mr. Toke.  The ECF systems
17  seems to have you at two law firms.  Hiaring Smith and Cobalt
18  LLC.
19          MR. TOKE:  Cobalt is correct.  Hiaring and Smith was
20  my former firm, your Honor.  I think I have been *pro hac* in
21  this court before when I was with Hiaring and Smith.
22          THE COURT: Go down to the clerk's office and just
23  explain to them that the ECF system has you at two different
24  firms and one of them is right and one of them is wrong.  Even
25  if we corrected it on this docket, the next time you had a case

F4niwavc ag                    CONFERENCE

1   here the same thing would happen.  It has to be corrected in
2   the brain of the ECF so you might want to just take care of it
3   while you're here.  And I'll see you tomorrow morning as well.
4            MR. TOKE:  11:45.
5            THE COURT:  Okay.
6            MR. KIMREY:  Just as a heads-up, I'll be siting back
7   there tomorrow.  I'll be quiet.
8            THE COURT:  It's a free country.  But you didn't come
9   from far away.
10           MR. KIMREY:  Chicago.
11           THE COURT:  Oh, you came from Chicago.  So you have to
12  stay over too.
13           MR. KIMREY:  I thought there was a strategy to that.
14           MR. TOKE:  We thought so too.
15           MR. KIMREY:  I thought that was intentional.  In
16  defense of Mr. Toke, I don't -- I would have just let it ride.
17           MR. TOKE:  Because of the confidential nature of the
18  terms of the agreement.
19           THE COURT:  That's fine.  And hopefully it won't come
20  up again.  I just meant if a lawyer calls and says look, you
21  have me come two days in a row, can I consolidate them, I
22  usually try to do that.  Especially when they're from out of
23  town.  I hope you're at least staying at the Ritz Carlton.  Way
24  cheaper than the one in the city.
25           (Proceedings adjourned)